# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ERICK RAHAMID HOBBS,

    Plaintiff,

    v.

BALTIMORE COUNTY, et al.,

    Defendants.

Civil Action No.:  ELH-21-2052

## MEMORANDUM OPINION

The self-represented plaintiff, Erick Rahamid Hobbs, filed suit, under oath, pursuant to 42 U.S.C. § 1983.  ECF 1-3; ECF 1-4; ECF 1-5.[1]  He named as defendants Baltimore County; Baltimore County Detention Center ("BCDC"); BCDC Director Gail Watts; Deputy Director Carolyn J. Scruggs; Major Robert Alford; Captain Michael Vogan; Sergeant Patrick Ejoh; Correctional Officer Alex Cordero; Correctional Officer Olds; Sergeant Eric Strawderman; and John Doe.[2]  Plaintiff alleges that while he was detained at BCDC, he was placed in restrictive housing without due process, held in unconstitutional living conditions, and improperly denied telephone privileges and access to counsel.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 30. The motion is supported by a memorandum (ECF 30-1) (collectively, the "Defense Motion") and exhibits.  Hobbs opposes the Defense Motion (ECF 33) and also moved for partial summary

---

[1] Suit was initially filed in the Circuit Court for Baltimore County.  ECF 1-3; ECF 1-4.  It was removed to this Court by defendants, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  ECF 1; ECF 2.  ECF 1-4 is captioned "Complaint (Amended)."  Plaintiff again amended the suit in June 2021.  *See* ECF 1-5.

[2] Hobbs subsequently identified John Doe as Lieutenant D. Copper. ECF 34-1 at 2.  The Clerk shall be directed to amend the docket to reflect this substitution.

judgment.  ECF 34 ("Plaintiff's Motion").  The motions are ripe for review, and no hearing is needed to resolve them.  *See* Local Rule 105.6 (D. Md. 2021).

For the reasons discussed below, I will grant the Defense Motion in part and deny it in part. I will also deny Plaintiff's Motion, without prejudice.

## I.     Background

### A.  Hobbs's verified complaint

Hobbs arrived at BCDC on February 4, 2018, "to await trial on charges."  ECF 1-5 at 5. He was temporarily housed in the Diagnostic Housing Unit.  ECF 1-5 at 5.  The following evening, Hobbs was transferred to a restrictive segregated housing unit (4S), without notice of infraction or other explanation for his transfer to segregation.  *Id.*  Hobbs contends that he did not present a threat to others, nor had he requested protective custody during his classification interview.  *Id.*

Officer Cordero received Hobbs at housing unit 4S and escorted him to his cell.  *Id.*  Hobbs avers that this was a "special targeted transfer" authorized by John Doe, a commanding officer, whose orders Cordero was following.  *Id.*

Hobbs remained in restrictive housing until February 16, 2018, when he was transferred to housing unit 3H.  ECF 1-5 at 6.  Hobbs did not receive any explanation for his placement, despite filing several complaints.  *Id.*  He complains of the conditions in restrictive housing, asserting that he was confined for 23 hours per day to a frigid cell in which the lights were on at all hours.  *Id.* Additionally, he claims that he was denied adequate bedding, hygiene items, and religious materials, as well as access to the institution's phone, commissary, television, law library, recreation, and other programming.  *Id.* at 6, 7.  According to Hobbs, he received a bar of soap only after requesting an "indigent package" from classification.  *Id.* at 6-7.

Hobbs states that he was sleep deprived and mentally exhausted. *Id.* at 7. When he informed the tier officers, they laughed at him and said they could not help. *Id.* Specifically, he claims that Cordero, Olds, and Strawderman were aware that he was being housed in these conditions without having been provided due process. *Id.* Hobbs also complained to Major Alford and Captain Vogan of the conditions in restrictive housing and his phone restriction, but they too were disinterested and took no action in response. *Id.* at 9.

On February 6, 2018, Hobbs informed Sergeant Ejoh about the circumstances of his placement in restrictive housing and the inhumane conditions he was experiencing, but Ejoh was unwilling to assist Hobbs. ECF 1-5 at 9. At Hobbs's request, Ejoh consulted with Officer Olds about the reasons for Hobbs's phone restriction, and reported that he did not know even though, Hobbs contends, he had the authority to obtain such information. *Id.* That evening, Hobbs attempted to use the phone to contact his family, but was informed by Officer Cordero that he was restricted from using the telephone. *Id.* at 8. Cordero knew Hobbs did not have any rule violation which had resulted in a phone restriction and thus was arbitrarily prohibiting his phone usage, depriving Hobbs of due process, and preventing him from retaining private counsel for an upcoming bail review hearing. *Id.*

When plaintiff was allowed out of his cell for a "walk" on February 12, 2018, Hobbs asked Officer Olds to contact the classification department to determine the basis for his continued confinement to restrictive housing without phone privileges. ECF 1-5 at 10. After Olds called, Hobbs was granted permission to use the phone. *Id.* The following day, while Hobbs was using the phone, Officer Cordero approached him to scold him for using the phone. *Id.* at 11. Hobbs informed Officers Cordero and Strawderman of his conversation with Officer Olds the day prior. *Id.* According to plaintiff, Cordero "reluctantly" stated: "'What are you supposed to do when the

State's Attorney calls and tells us to keep you off the phone.'" *Id.* Moreover, when Officer Strawderman returned Hobbs to his cell, he informed Hobbs that he was being housed on 4S on a "strictly 'need to know' basis," and originally was only supposed to be housed on 4S for twenty-four hours before entering general population. *Id.* at 12.

On February 27, 2018, after Hobbs was removed from restrictive housing, he met with Captains Vogan and Greer to discuss the complaints he submitted while in restrictive housing. ECF 1-5 at 12. Vogan informed Hobbs that his complaints had been determined to be unfounded and issued a written response to that effect, which Hobbs states failed to specifically address the allegation that he was placed in restrictive housing without reason. *Id.* Hobbs appealed Vogan's finding to the Warden on March 8, 2018. *Id.* at 13. Deputy Director Scruggs responded on March 14, 2018, stating that his complaint was under investigation. *Id.* On May 7, 2018, Administrative Captain Daniel Swain issued a response, which Hobbs asserts did not deny that his placement was against BCDC policy, but confirmed "outside influences" on the decision. *Id.*

### B. Defense Motion

In support of the Defense Motion, defendants submit various exhibits, including Hobbs's state criminal docket report (ECF 30-2) and Classification Report (ECF 30-3)[3]; the Affidavit of Director Gail Watts (ECF 30-4); BCDC's Initial Classification Policy (ECF 30-5); and various intra-department memoranda (ECF 30-6; 30-7).

---

[3] The Court notes that defendants' Exhibit 2, Hobbs' Baltimore County Classification Report (ECF 30-3), does not comply with Rule 5.2 of the Federal Rules of Civil Procedure. That rule prohibits the filing of a document with the court containing an individual's full birth date, and states that the filer may only include "the year of the individual's birth." Fed. R. Civ. P. 5.2(a)(2). Therefore, the Clerk shall seal ECF 30-3.

By September 2, 2022, defense counsel shall file a redacted version of ECF 30-3, which omits from ECF 30-3 all references to Hobbs' birth month and day. Defense counsel is reminded that all future filings in this matter must comply with Rule 5.2.

Following a bail review hearing before the District Court for Baltimore County on February 4, 2018, Hobbs was held at BCDC without bail. ECF 30-2 at 3; 30-3 at 4. The following day, BCDC was informed by Baltimore County Police detectives that they were investigating an incident in which Hobbs provided the name and address of the victim in a federal court case over the phone while being processed into BCDC. ECF 30-4 at ¶ 13; ECF 30-6. During this investigation, which lasted from February 5 through February 16, 2018, Hobbs was assigned to Housing Unit 4S by the classification officers. *Id.* at ¶ 14.

Generally, all new inmates are assigned to diagnostic housing before they are classified and moved to their housing assignment. *Id.* at ¶¶ 8, 9; *see* ECF 30-5 at 2 (Classification "determine[s] appropriate custody levels, housing assignments, programming and work assignments."). Classification officers have broad discretion in determining an inmate's security classification and consider an inmate's current charges, additional pending charges, length of confinement, commitment status, past criminal history, escape history, risk to the public, notoriety, institutional history, program needs, and personal information. ECF 30-4 at ¶ 9; ECF 30-5 at 4.

When an inmate is classified into "Special Housing," such as protective custody or administrative segregation, a classification supervisor is tasked to write a letter explaining their rationale for the assignment to be placed in the inmate's classification file and provided to various correctional staff and the inmate. ECF 30-5 at 4. Watts avers that Hobbs was held in Housing Unit 4S for "security reasons and the broad discretion of the Detention Center in protecting the greater public." ECF 30-4 at ¶ 15. On February 16, 2018, Hobbs was transferred to Housing Unit 3H. ECF 30-3 at 4.

Hobbs made several complaints while in restrictive housing. However, according to Watts, correctional staff could not disclose to Hobbs any information related to the ongoing criminal

investigation.  ECF 30-4 at ¶ 17.  On February 27, 2018, Captains Vogan and Greer met with Hobbs to discuss his complaints regarding his placement in Housing Unit 4S and the conditions in that unit.  Although the Captains could not confirm or deny Hobbs's contention that his placement had been at the State's Attorney's request, they informed Hobbs that the facility had been in lock down with limited movement from February 9 to February 16, 2018.  ECF 30-7 at 1.  Hobbs's complaints were ultimately determined to be unfounded because Hobbs stated he was able to speak with a public defender prior to his bail review hearing and because telephones were available to him while in Housing Unit 4S, but Hobbs did not request to use them.  ECF 30-4 at ¶ 18; ECF 30-7 at 1.  Moreover, the "life line blanket" provided was found to be sufficient linens for the housing unit.  ECF 30-4 at ¶ 20; ECF 30-7 at 1.  Hobbs was also granted walks on February 6, 9, 13, and 15.  ECF 30-3.

## II.     Standards of Review

Because plaintiff is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 30. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'")

(citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)).  To adequately raise the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its

opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at their peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant."  *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional

discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 F. App'x at 638.

Hobbs has not filed an affidavit under Rule 56(d).  And, I am satisfied that it is appropriate to address the Defense Motion as one for summary judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary

judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc*., 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc*., 888 F.3d at 659; *Sharif v. United Airlines, Inc*., 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).  But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he must support his factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ."  But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; accord *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). But, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). Rather, "there must be evidence on which the jury could reasonably find for the nonmovant." *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (alteration and internal quotation marks omitted).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; accord *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-

19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)). But, if testimony is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc*., 700 Fed. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, ___ F. 4th ___, 2022 WL 2901043, at *9 (4th Cir. July 22, 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

On the other hand, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012). "[T]o avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial. Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997).

### III.    Discussion

### A.  Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

### B. Baltimore County Detention Center

First, defendants argue that the Baltimore County Department of Corrections, referred to in the Amended Complaint as Baltimore County Detention Center, is not a legal entity subject to suit. ECF 30-1 at 7. Hobbs does not contest this point. ECF 33-1 at 3. Because BCDC is not a "person" subject to suit under 42 U.S.C. § 1983, Hobbs's claims against it must be dismissed. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see Borkowski v. Balt. Cnty.*, 414 F.Supp. 3d. 788, 804 (D. Md. 2019) (finding that the Baltimore County Police Department is not *sui juris* because it is simply an agency of Baltimore County).

### C. Conditions of Confinement

Hobbs was a pretrial detainee at BCDC at all times relevant to the suit. Therefore, his claim regarding his conditions of confinement while at BCDC falls under the purview of the Fourteenth Amendment.

"Civil detainees who challenge the conditions of their confinement are protected by the Due Process Clauses of the Fifth and Fourteenth Amendments." *Coreas v. Bounds*, 451 F. Supp. 3d 407, 420 (D. Md. 2020) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)); *see also Gattuso v. C.C.S. Med. Dep.*, No. CV TDC-18-3470, 2020 WL 488954, at *3 (D. Md. Jan. 29, 2020). However, these protections are at least as robust as those of the Eighth Amendment, because "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." *Youngberg*, 457 U.S. at 315-16; *see also Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (holding that pretrial detainees "retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"). Protections for individuals confined by the state, whether civilly or criminally, include the right to reasonable safety and adequate medical care. *See Youngberg*, 457 U.S. at 315-16; *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (holding that prison officials are constitutionally required to maintain "humane conditions of confinement," including "the provision of adequate medical care" and taking "reasonable measures to guarantee the safety of the inmates").

In *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992), the Fourth Circuit determined that the Eighth Amendment deliberate indifference standard applies to Fourteenth Amendment claims by pretrial detainees alleging inadequate medical care. The same standard applies to conditions of confinement claims. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 259 (D. Md. 2020) ("Importantly '[w]hether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard.'" (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

16

However, since *Hill v. Nicodemus*, the Supreme Court has called into question whether the same standard applies to claims brought by pretrial detainees and post- conviction inmates.  In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court said that, unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component. *Id.* at 395-97. In the wake of *Kingsley*, Circuit Courts have split regarding whether pretrial detainees asserting deliberate indifference claims under the Fourteenth Amendment likewise need only meet the objective standard. *See Mays v. Sprinkle*, 992 F.3d 295, 300-01 & n.4 (4th Cir. 2021) (noting that the Second, Seventh, and Ninth Circuits have adopted a completely objective standard for pretrial-detainee-medical-deliberate- indifference claims while the "Fifth, Eighth, and Eleventh Circuits cabined *Kingsley* to its facts—pretrial-detainee-excessive-force claims—and continue to require subjective knowledge of the condition and risk for pretrial-detainee-deliberate-indifference claims").

To my knowledge, the Fourth Circuit has not yet resolved the issue.  *See id.*  And, other courts in this District have found that they "remain[] bound by Fourth Circuit precedent to apply the traditional deliberate indifference standard adopted in *Hill*."  *Gattuso v. C.C.S. Med. Dep.*, TDC-18-3470, 2020 WL 488954, at *4 (D. Md. Jan. 29, 2020); *see also Ajeo v. Dep't of Juv. Servs.*, PWG-21-1145, 2021 WL 2936266, at *4 n.5 (D. Md. July 13, 2021).

Here, the Court's conclusions do not turn on the allegations of the officials' subjective state of mind.  Thus, I need not resolve the question, because the results would be the same, regardless of the standard.  That said, I turn to review the parameters of the Eighth Amendment.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976);

*see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor*, 817 F.3d at 127.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer*, 511 U.S. at 834; *Hixson*, 1 F.4th at 302; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety."  *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Under the objective prong, plaintiffs must demonstrate that the alleged deprivation was "'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of serious harm resulting from . . . exposure to the challenged conditions.'" *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (quoting *Scinto*, 841 F.3d at 225).[4]  To demonstrate the subjective component, a plaintiff must show deliberate

---

[4] For example, in the context of a claim concerning inadequate medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless

indifference, meaning "'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'"  *Porter*, 923 F.3d at 361 (quoting *Scinto*, 841 F.3d at 225) (alterations in *Porter*).

"Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'"  *Scinto*, 841 F.3d at 225 (alternation in original) (quoting *Farmer*, 511 U.S. at 837); *see King*, 825 F.3d at 219 (stating that although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" ) (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that a risk was obvious.'"  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995). "[O]nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted."  *Williams v. Griffin*, 952 F.2d 820, 826 (4th Cir. 1991).

Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."

---

disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

*Farmer*, 511 U.S. at 837.   The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."); *see Mays*, 992 F.3d at 300.

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted).   Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (emphasis in *Lightsey*).

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.   Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.   *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Taking Hobbs's verified allegations of the conditions he suffered as true, the Court cannot find that they are "objectively, sufficiently serious." *Cox*, 828 F.3d at 236.   The inquiry with respect to the alleged conditions of confinement is whether those conditions amounted to punishment of a pretrial detainee, because due process proscribes punishment of a detainee before proper adjudication of guilt. *Wolfish*, 441 U.S. at 535.   "[N]ot every inconvenience encountered

during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 538-40). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Moreover, the length of confinement "cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney*, 437 U.S. 678, 686 (1978). In determining whether the challenged conditions amount to punishment, it is not the province of this Court to determine how a particular prison might be more beneficently operated; the expertise of prison officials is entitled to due deference. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

Hobbs was assigned to the restrictive housing unit for approximately twelve days. As a result of the stated conditions, he was sleep deprived and mentally exhausted. Although there is a dispute between the parties as to the conditions Hobbs experienced, I must construe the facts in the light most favorable to Hobbs. Even when doing so, there is no evidence in the record that Hobbs suffered a serious injury as a result of his time in the restrictive housing unit.

Hobbs provides no evidence to support a finding that the sleep deprivation and mental exhaustion he suffered was serious enough to establish an unconstitutionally extreme deprivation. Furthermore, he was subjected to these conditions for only a short period of time. Accordingly, defendants are entitled to summary judgment with respect to Hobbs's conditions of confinement claim.

### D. Hobbs's remaining claims

Hobbs also claims that he was placed in the restrictive housing unit without being provided any explanation or due process and was denied telephone access, depriving him of the ability to hire private counsel. In particular, Hobbs asserts that in violation of the Due Process Clause of the

Fourteenth Amendment, he was placed in restrictive housing unit 4S, but was not served with an institutional infraction or any other justification for losing his institutional privileges. *See* ECF 1-5 at 5. Additionally, during this time he was denied telephone access, which inhibited him from hiring a private attorney to represent him at his bail review hearing. *Id.* at 8.

Defendants gloss over these allegations and do not address the restrictive housing or telephone restriction claims in the legal analysis section of their memorandum, arguing only that they were not deliberately indifferent and are entitled to qualified immunity. ECF 30-1. In stating the relevant facts, defendants rely on the declaration of Director Gail Watts. She acknowledges Hobbs's allegations of improper placement and explains the policy concerning the initial classification of inmates as well as the reasoning for Hobbs's placement in restrictive housing. ECF 30-4. Defendants also attach BCDC's initial classification policy.

Still, the memorandum does not assert that Hobbs failed to state a claim on either the due process or telephone restriction claims. Rather, it appears that defendants have conflated Hobbs's conditions of confinement claim with his claims challenging his placement in restrictive housing and denial of telephone access, failing adequately to respond to these allegations, as stated in the amended complaint.

Defendants generally contend that Hobbs's allegations do not rise to the level of a constitutional violation, asserting that they were within their discretion to place Hobbs in restrictive housing and restrict his telephone access. ECF 30-1 at 9-10. However, they fail substantively to address Hobbs's allegations that he was deprived of due process before being placed in the restrictive housing unit or that he was improperly deprived of telephone access.

In his opposition, Hobbs argues that his placement in restrictive housing was punitive. However, he still acknowledges that the procedural protections afforded detainees varies

depending upon whether administrative or disciplinary segregation is imposed, and that the record is unclear in this case.  ECF 33-1.

I cannot resolve the claims on this record.  Specifically, it cannot be determined whether the restrictive housing unit is administrative or disciplinary segregation, nor what, if any, regulations BCDC follows in determining classification and housing after the initial classification process.

Based on the evidence before the Court, I will deny the Defense Motion as to Hobbs's allegations that he was improperly placed in restrictive housing and denied telephone access inhibiting his ability to retain counsel.  These claims will proceed against the remaining defendants.  However, the denial of the Defense Motion is without prejudice to the right of defendants to file an additional motion with the court if they wish to move for summary judgment on these claims.

### E.  Plaintiff's Motion

Hobbs moves for partial summary judgment on his claims (1) that Lt. Cooper, previously identified as John Doe, denied him due process when he placed him in restrictive housing; (2) that defendants Cordero, Olds, and Strawderman denied him due process when they refused him access to a telephone while he was in restrictive housing, and (3) defendants Watts, Scruggs, Alford, Vogan, and Ejoh are liable for due process violations under supervisory liability.  ECF 34-1.

As the Court has already acknowledged, the record is insufficient to decide Hobbs's remaining claims.  Therefore, plaintiff's Motion will also be denied, without prejudice.

### IV.    Conclusion

For the foregoing reasons, the Defense Motion, construed as a motion for summary judgment, is GRANTED in part and DENIED in part, without prejudice.  Summary judgment shall

be entered in favor of all defendants on the conditions of confinement claim.  Defendants shall respond to Hobbs's remaining claims as stated herein.  And, Hobbs's motion for partial summary judgment is denied, without prejudice.

A separate Order follows.

August 18, 2022                                                          /s/
        Date                                              Ellen L. Hollander
                                                          United States District Judge