**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ERICK RAHAMID HOBBS,

    Plaintiff,

    v.

BALTIMORE COUNTY, et al.,

    Defendants.

Civil Action No.:  ELH-21-2052

**MEMORANDUM OPINION**

    Plaintiff Erick Rahamid Hobbs filed an Amended Complaint in a Maryland court on June 14, 2021, pursuant to 42 U.S.C. § 1983, against Baltimore County, Maryland; Baltimore County Detention Center ("BCDC"); BCDC Director Gail Watts; Deputy Director Carolyn J. Scruggs; Major Michael Alford; Captain Michael Vogan; Sergeant Patrick Ejoh; Officer Cordero; Officer Olds; Officer Strawderman; and "John Doe."  ECF 1-5.[1]  The case was removed to this court on August 13, 2021.  ECF 1.[2]

    In general, Hobbs complains about his conditions of confinement at BCDC, his placement in a restrictive housing unit, and the alleged denial of access to a telephone to contact counsel prior to a bail review hearing.  Hobbs initially named a John Doe defendant, but he has identified John Doe as Lieutenant D. Copper.  ECF 34-1 at 2.[3]

---

[1] It appears that the suit was initially filed in June 2018.

[2] The Notice of Removal identifies the Baltimore County Executive as a defendant, but he is not named in the Amended Complaint.  *See* ECF 1-5.  The removal included 72 exhibits.

[3] The name also appears as "Coppeer."  *See* ECF 30-6.

By Memorandum (ECF 36) and Order (ECF 37) of August 18, 2022, BCDC was dismissed from the suit and judgment was entered in favor of the remaining defendants as to Hobbs's conditions of confinement claim.

Then, on October 31, 2022, defendants filed a supplemental motion to dismiss or, in the alternative, for summary judgment. ECF 42. The motion is supported by a memorandum (ECF 42-1) (collectively, the "Motion") and exhibits. Hobbs filed a verified opposition (ECF 48) and memorandum. ECF 48-1 (collectively, "Opposition"). He also submitted a Declaration. ECF 48-2. In the Declaration, plaintiff explains why he believes he is entitled to conduct discovery.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons discussed below, I will grant defendants' Motion in part and deny it in part.

## I.      Factual Background

In a Memorandum Opinion of August 18, 2022 (ECF 36), I considered an earlier motion to dismiss or, in the alternative, for summary judgment, filed by defendants. *See* ECF 30; ECF 30-1. I construed the motion as one for summary judgment and granted it in part and denied it in part. ECF 36.

Of relevance here, I summarized the factual background of the case. The Court said, ECF 36 at 2-6:

### A.   Hobbs' verified complaint

Hobbs arrived at BCDC on February 4, 2018, "to await trial on charges." ECF 1-5 at 5. He was temporarily housed in the Diagnostic Housing Unit. ECF 1-5 at 5. The following evening, Hobbs was transferred to a restrictive segregated housing unit (4S), without notice of infraction or other explanation for his transfer to segregation. *Id.* Hobbs contends that he did not present a threat to others, nor had he requested protective custody during his classification interview. *Id.*

2

Officer Cordero received Hobbs at housing unit 4S and escorted him to his cell. *Id.* Hobbs avers that this was a "special targeted transfer" authorized by John Doe, a commanding officer, whose orders Cordero was following. *Id.*

Hobbs remained in restrictive housing until February 16, 2018, when he was transferred to housing unit 3H. ECF 1-5 at 6. Hobbs did not receive any explanation for his placement, despite filing several complaints. *Id.* He complains of the conditions in restrictive housing, asserting that he was confined for 23 hours per day to a frigid cell in which the lights were on at all hours. *Id.* Additionally, he claims that he was denied adequate bedding, hygiene items, and religious materials, as well as access to the institution's phone, commissary, television, law library, recreation, and other programming. *Id.* at 6, 7. According to Hobbs, he received a bar of soap only after requesting an "indigent package" from classification. *Id.* at 6-7.

Hobbs states that he was sleep deprived and mentally exhausted. *Id.* at 7. When he informed the tier officers, they laughed at him and said they could not help. *Id.* Specifically, he claims that Cordero, Olds, and Strawderman were aware that he was being housed in these conditions without having been provided due process. *Id.* Hobbs also complained to Major Alford and Captain Vogan of the conditions in restrictive housing and his phone restriction, but they too were disinterested and took no action in response. *Id.* at 9.

On February 6, 2018, Hobbs informed Sergeant Ejoh about the circumstances of his placement in restrictive housing and the inhumane conditions he was experiencing, but Ejoh was unwilling to assist Hobbs. ECF 1-5 at 9. At Hobbs's request, Ejoh consulted with Officer Olds about the reasons for Hobbs's phone restriction, and reported that he did not know even though, Hobbs contends, he had the authority to obtain such information. *Id.* That evening, Hobbs attempted to use the phone to contact his family, but was informed by Officer Cordero that he was restricted from using the telephone. *Id.* at 8. Cordero knew Hobbs did not have any rule violation which had resulted in a phone restriction and thus was arbitrarily prohibiting his phone usage, depriving Hobbs of due process, and preventing him from retaining private counsel for an upcoming bail review hearing. *Id.*

When plaintiff was allowed out of his cell for a "walk" on February 12, 2018, Hobbs asked Officer Olds to contact the classification department to determine the basis for his continued confinement to restrictive housing without phone privileges. ECF 1-5 at 10. After Olds called, Hobbs was granted permission to use the phone. *Id.* The following day, while Hobbs was using the phone, Officer Cordero approached him to scold him for using the phone. *Id.* at 11. Hobbs informed Officers Cordero and Strawderman of his conversation with Officer Olds the day prior. *Id.* According to plaintiff, Cordero "reluctantly" stated: "'What are you supposed to do when the State's Attorney calls and tells us to keep you off the phone.'" *Id.* Moreover, when Officer Strawderman

returned Hobbs to his cell, he informed Hobbs that he was being housed on 4S on a "strictly 'need to know' basis," and originally was only supposed to be housed on 4S for twenty-four hours before entering general population. *Id.* at 12.

On February 27, 2018, after Hobbs was removed from restrictive housing, he met with Captains Vogan and Greer to discuss the complaints he submitted while in restrictive housing. ECF 1-5 at 12. Vogan informed Hobbs that his complaints had been determined to be unfounded and issued a written response to that effect, which Hobbs states failed to specifically address the allegation that he was placed in restrictive housing without reason. *Id.* Hobbs appealed Vogan's finding to the Warden on March 8, 2018. *Id.* at 13. Deputy Director Scruggs responded on March 14, 2018, stating that his complaint was under investigation. *Id.* On May 7, 2018, Administrative Captain Daniel Swain issued a response, which Hobbs asserts did not deny that his placement was against BCDC policy, but confirmed "outside influences" on the decision. *Id.*

## B. Defense Motion

In support of the Defense Motion, defendants submit various exhibits, including Hobbs's state criminal docket report (ECF 30-2) and Classification Report (ECF 30-3); the Affidavit of Director Gail Watts (ECF 30-4); BCDC's Initial Classification Policy (ECF 30-5); and various intra-department memoranda (ECF 30-6; 30-7).

Following a bail review hearing before the District Court for Baltimore County on February 4, 2018, Hobbs was held at BCDC without bail. ECF 30-2 at 3; 30-3 at 4. The following day, BCDC was informed by Baltimore County Police detectives that they were investigating an incident in which Hobbs provided the name and address of the victim in a federal court case over the phone while being processed into BCDC. ECF 30-4 at ¶ 13; ECF 30-6. During this investigation, which lasted from February 5 through February 16, 2018, Hobbs was assigned to Housing Unit 4S by the classification officers. *Id.* at ¶ 14.

Generally, all new inmates are assigned to diagnostic housing before they are classified and moved to their housing assignment. *Id.* at ¶¶ 8, 9; *see* ECF 30-5 at 2 (Classification "determine[s] appropriate custody levels, housing assignments, programming and work assignments."). Classification officers have broad discretion in determining an inmate's security classification and consider an inmate's current charges, additional pending charges, length of confinement, commitment status, past criminal history, escape history, risk to the public, notoriety, institutional history, program needs, and personal information. ECF 30-4 at ¶ 9; ECF 30-5 at 4.

When an inmate is classified into "Special Housing," such as protective custody or administrative segregation, a classification supervisor is tasked to write a letter explaining their rationale for the assignment to be placed in the inmate's classification file and provided to various correctional staff and the inmate. ECF 30-5 at 4. Watts avers that Hobbs was held in Housing Unit 4S for "security reasons and the broad discretion of the Detention Center in protecting the greater public." ECF 30-4 at ¶ 15. On February 16, 2018, Hobbs was transferred to Housing Unit 3H. ECF 30-3 at 4.

Hobbs made several complaints while in restrictive housing. However, according to Watts, correctional staff could not disclose to Hobbs any information related to the ongoing criminal investigation. ECF 30-4 at ¶ 17. On February 27, 2018, Captains Vogan and Greer met with Hobbs to discuss his complaints regarding his placement in Housing Unit 4S and the conditions in that unit. Although the Captains could not confirm or deny Hobbs's contention that his placement had been at the State's Attorney's request, they informed Hobbs that the facility had been in lock down with limited movement from February 9 to February 16, 2018. ECF 30-7 at 1. Hobbs's complaints were ultimately determined to be unfounded because Hobbs stated he was able to speak with a public defender prior to his bail review hearing and because telephones were available to him while in Housing Unit 4S, but Hobbs did not request to use them. ECF 30-4 at ¶ 18; ECF 30- 7 at 1. Moreover, the "life line blanket" provided was found to be sufficient linens for the housing unit. ECF 30-4 at ¶ 20; ECF 30-7 at 1. Hobbs was also granted walks on February 6, 9, 13, and 15. ECF 30-3.

In particular, I directed defendants to respond to Hobbs's claims for denial of due process and telephone privileges while in restrictive housing.  ECF 36.  In their Motion, defendants incorporate their earlier motion and the exhibits.  And, they add to the record the affidavit of Major David Greer (ECF 42-2), as well as documents pertaining to Hobbs's state and federal criminal proceedings.  ECF 42-3; 42-4.

Major Greer attests that Housing Unit 4S is not a restrictive housing unit, but rather "may be used to house special observation inmates at any given time."  ECF 42-2 (Greer Decl.), ¶ 11. He recounts that Baltimore County Police Detectives ("BCPD") relayed information to BCDC on February 5, 2018, about an alleged threat made by Hobbs as to the victim in his case.  *Id.* ¶ 10. Therefore, while the matter was investigated, Hobbs was assigned to Housing Unit 4S, which is

not a restrictive housing unit. *Id.* ¶ 11. He avers that Hobbs's placement in Unit 4S was for "security reasons," *id.* ¶ 12, and for "administrative purposes," but "was not disciplinary in nature." *Id.* ¶ 11. He also notes that Unit 4S was on quarantine during the relevant time period due to an influenza outbreak, and thus prisoner movement was limited. *Id.* ¶ 13.

Hobbs was restricted from telephone access for 24 hours, while the victim was relocated. ECF 42-2, ¶ 19. But, had Hobbs requested to use the phone, Major Greer avers that he would have been permitted to do so, except for the 24 hours that Baltimore County detectives requested a restriction. *Id.* Moreover, he claims that all inmates in Housing Unit 4S must request access to the telephones. *Id.* ¶ 20. And, Greer avers that if Hobbs had specifically asked to use the phone to speak to an attorney, he would have been permitted to do so, regardless of the 24-hour phone restriction. *Id.* ¶ 21.

Notably, Major Greer attests that Hobbs admitted on February 8, 2018, that he spoke to his public defender prior to his bail review hearing. *Id.* ¶ 17; *see also* ECF 30-7. Moreover, the state district court records show that on February 4, 2018, Hobbs qualified for public defender representation for his bail review hearing the following day. ECF 42-3 at 5.

Ultimately, on June 12, 2018, a federal arrest warrant was issued for Hobbs for possession of a firearm and ammunition by a prohibited person, pursuant to 18 U.S.C. § 922(g)(1). ECF 42-4. Hobbs states that shortly thereafter, on June 23, 2018, his pending State charges were nolle prossed. ECF 48-1 at 3. Two days later he was released into federal custody. *Id.* Hobbs seeks to recover for the deprivation of procedural due process, cruel and unusual punishment, and the deprivation of his right to retain private counsel, in violation of the Fourteenth and Six Amendments. *Id.*

## I.     Standard of Review

### A.

Hobbs is self-represented.  Therefore, his submissions are liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (recognizing the "leniency" in treatment of pro se submissions, "necessarily requiring . . . thoughtful consideration [by the court] of all factual allegations, and  not just expressly pled claims"); *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (stating that the court reads pro se pleadings "'liberally and interpret[s] them to raise the strongest arguments that they suggest.'") (some internal quotation marks omitted; citation omitted); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

### B.

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 42.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw*, 59 F.4th at 128; *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. V. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  *See Shaw*, 2023 WL 1486310, at *4; *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom*. *Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. Of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at their peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

As part of his opposition, Hobbs argues that time is needed for discovery and he includes his Declaration in support. ECF 48-1 at 3; ECF 48-2. Hobbs asserts in his Declaration that discovery will show there was no request from law enforcement regarding his housing assignment; his placement was an arbitrary decision made by defendants to punish him; defendants were not aware of any state or federal investigation; he did not make any threats during his phone call on February 4, 2018; the rationale for his housing assignment; and that he was deprived of phone access. ECF 48-2.

Courts tend to deny Rule 56(d) requests grounded in speculation or amounting to a "fishing expedition." *Gardner v. United States*, 184 F. Supp. 3d 175, 185 (D. Md. 2016) (denying request because plaintiff expressed mere hope that discovery would yield evidence to establish claim). Here, while Hobbs contends that discovery will demonstrate these points material to his claim, he fails to assert with any specificity what specific documents he believes exist which, if made available to him through discovery, would support his claim and create a genuine issue of material fact.[4] As such, I will deny Hobbs' request for discovery and will address the Supplemental Motion as one for summary judgment.

---

[4] Hobbs asserts in his request for discovery that the Court may be persuaded to reconsider

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S.

---

entering judgment against him on his conditions of confinement claim. ECF 48-1 at 1.  He contends that his allegations that his cell was  illuminated for 24 hours a day is sufficient to state a valid Fourteenth Amendment claim.  *Id.* at 11.  As Hobbs makes his request for reconsideration more than 28 days after the entry of judgment, it is governed by Fed. R. Civ. P.  60(b).  *See Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010) (citing *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996)); *see also Vaughan v. Murray,* No. 95-6081, 1995 WL 649864, at \*3 n. 3 (4th Cir. Nov. 6, 1995).

Rule 60 permits relief from a judgment or order of this court in order to correct clerical mistakes, oversights, and omissions.  Fed. R. Civ. P. 60(a).  A party may also be granted relief from judgment on motion for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, release or discharged; (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).  It is within this court's discretion to grant or deny a motion filed pursuant to Rule 60(b).  *See Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993).

Hobbs relies on his Rule 56(d) Declaration, stating that discovery will confirm the alleged conditions he suffered in restrictive housing.  *See* ECF 48-2, ¶¶ 7-8.  He otherwise makes no showing as to why he is entitled to relief under Rule 60.  As with his other discovery requests, he does not state with any specificity the discovery which would supposedly support his claim.  Nor does he provide any explanation for why he did not make these requests in opposition to the defendants' prior summary judgment motion.  As Hobbs has not stated an adequate basis for relief, his request for reconsideration is denied.

557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248; *see Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Sedar v. Reston Town Ctr. Prop., LLC*, 998 F.3d 756, 761 (4th Cir. 2021); *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 522 (quoting former Fed. R. Civ. P. 56(e)). Moreover, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

That said, "conclusory allegations or denials, without more, are insufficient to preclude" the award of summary judgment. *Wai Man Tom*, 980 F.3d at 1037 (citation omitted). Moreover, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423,

14

433 (4th Cir. 2004)).  And, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 Fed. App'x 285, 294 (4th Cir. 2012).

Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007). But, if testimony is based on personal knowledge or firsthand experience, it can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving.  *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 Fed. App'x 209, 212 (4th Cir. 2017).  Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'"  *Cowgill v. First Data Technologies, Inc.*, 41 F. 4th 370, 383 n.8 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

In sum, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Judd*, 718 F.3d at 313. On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II.    Discussion

Defendants assert that they are entitled to summary judgment in their favor because Hobbs's time in restrictive housing was related to a legitimate penological interest, that Hobbs was

provided all the process he was due, the imposed phone restrictions did not deny Hobbs access to counsel or the courts, and they are, in any event, entitled to qualified immunity.  ECF 42-1.  Hobbs has verified his opposition.  Therefore, it will be considered as an affidavit.  *See* ECF 48-1 at 19.

A. Fourteenth Amendment

Under the Fourteenth Amendment, a pretrial detainee has a constitutional right "'to be free from punishment.'"  *Williamson v. Stirling*, 912 F.3d 154, 173 (4th. Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Because a pretrial detainee has not been convicted of the crime with which he is charged, he retains a liberty interest in freedom from "punishment," even while he is detained to ensure his presence at trial.  *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (quoting *Bell*, 441 U.S. at 535-37).  This principle applies to substantive and procedural due process claims by pretrial detainees.  *Williamson*, 912 F.3d 173-74.

But, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense."  *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 537).  Loss of freedom of choice and privacy are inherent incidents of confinement.  *Id.*  That a "disability" is imposed for the purpose of punishment may be clear from "an expressed intent to punish on the part of detention facility officials[.]"  *Bell*, 441 U.S. at 538.  If not expressed, then a court still may infer an intent to punish, unless a "condition or restriction of pretrial detention is reasonably related" to a "legitimate governmental objective."  *Id.* at 539; *see also Martin*, 849 F.2d at 870 (to establish that restriction is "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective"); *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005) (same).

Without an explicit intention to punish a pretrial detainee, a court "must evaluate the evidence and ascertain the relationship between the actions taken against the detainee and the custodian's supporting rationale." *Williamson*, 912 F.3d at 178 (citing *Slade*, 407 F.3d at 251). Such an inquiry "turns on whether the actions taken may validly be attributed to an alternative, nonpunitive rationale, and whether they appear 'excessive in relation to the alternative purpose assigned.'" *Williamson*, 912 F.3d at 178 (quoting *Robles v. Prince George's County*, 302 F.3d 262, 269 (4th Cir. 2002) (in turn quoting *Bell*, 441 U.S. at 538)).

The *Williamson* Court further explains, 912 F.3d at 174-75:

> A pretrial detainee challenging individually-imposed restrictions — as opposed to shared conditions of confinement — is entitled to pursue a procedural due process claim. *See, e.g., Dilworth*, 841 F.3d at 250-52. In *Bell*, the Supreme Court distinguished between "punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *See* 441 U.S. at 537. Such "regulatory restraints" include administrative and disciplinary measures used by responsible jail officials "to maintain security and order" in detention facilities. *See id.* at 540. Accordingly, jail officials are entitled to discipline pretrial detainees for infractions committed in custody and to impose restrictions for administrative purposes without running afoul of *Bell*. *See, e.g.*, *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996) (explaining that jail may discipline pretrial detainee to "preserv[e] 'internal order and discipline;'") (quoting *Bell*, 441 U.S. at 546). That said, such administrative and disciplinary measures also implicate a pretrial detainee's liberty interest in remaining free from punishment. *See Dilworth*, 841 F.3d at 251; *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005). Thus, proportional restrictions imposed on a pretrial detainee for a permissible purpose can trigger due process protections, pursuant to *Bell* and the Due Process Clause. *See Dilworth*, 841 F.3d at 252; *see also Jacoby v. Baldwin County*, 835 F.3d 1338, 1347-48 (11th Cir. 2016) (collecting decisions).
>
> The level of procedural due process to which a pretrial detainee is entitled in a particular situation, however, depends on context. More specifically, a pretrial detainee's procedural protections vary according to whether a restriction was imposed for disciplinary or administrative purposes. If the restriction imposed by jail officials is a disciplinary one — arising from a pretrial detainee's misconduct in custody — the detainee is entitled to notice of the alleged misconduct, a hearing, and a written explanation of the resulting decision. *See Dilworth*, 841 F.3d at 252-54 (recognizing that pretrial detainees are "entitled under *Bell* to procedural due process in connection with any 'punishment' imposed" by detention facility, including notice and hearing).

If, however, a restriction imposed by the jail officials is for administrative purposes — which include managerial and security needs — the level of process to which the pretrial detainee is entitled is diminished. In those situations, the courts of appeals have generally concluded that some level of process must be afforded to the pretrial detainee, even if the process is provided after the restriction has been imposed. *See Dilworth*, 841 F.3d at 255 (explaining that jail may take "immediate preventative action" for security reasons but process must subsequently be provided).

As I see it, based on a review of the record, and viewing the evidence in the light most favorable to Hobbs, there are genuine issues of material fact that prevent resolution by way of summary judgment. Specifically, there are disputes regarding whether Hobbs' housing assignment was reasonably related to a legitimate nonpunitive governmental objective.

Central to defendants' argument is that Hobbs was placed in Housing Unit 4S at the request of BCPD. The record shows that BCPD requested that Hobbs "be restricted from phone access for 24 hours in order for Det. [redacted] to have the victim relocated due to the action of inmate Hobbs." ECF 30-6. Lt. Coppeer then made the determination to move Hobbs to Unit 4S, where he remained for twelve days. *Id.*

The parties dispute whether BCPD was conducting an ongoing investigation related to the threat allegations. While Director Watts and Major Greer attest that the alleged phone threat incident was under investigation and therefore it was necessary for Hobbs to remain in restrictive housing (ECF 30-4, ¶¶ 13-14; ECF 42-2, ¶ 11), Hobbs avers that Officer Strawderman informed him that he "was only supposed to be kept on 4S for '24 hours.'" ECF 1-5 at 12. In Hobbs's view, defendants' actions were in excess of what was requested by BCPD because they sought to punish him for the alleged threats he made to a victim in his State criminal matter. ECF 48-1 at 5-7.

Even assuming that the investigation remained ongoing, Hobbs disputes defendants' assertion that his housing assignment was related to a non-punitive penological interest.

Defendants state that Unit 4S is an observational unit and specifically not disciplinary in nature. Even if observational in nature, Hobbs avers that it is excessively restrictive in light of the stated goal to restrict his telephone access for security purposes. He outlines several restraints in addition to his phone restriction, such as being confined to a cell for 23 hours a day; no access to religious programs; restrictions as to purchases at the commissary, and watching television, accessing the law library; and no ability to control cell lights, which remained on all day. ECF 1-5 at 6-7; 48-1 at 12-13. Moreover, the letter placed in Hobbs's inmate file pursuant to Department of Corrections Policy (ECF 30-5 at ¶ 15) does not explain why Lt. Coppeer decided to move Hobbs to Unit 4S instead of restricting his phone access while in general population. ECF 30-6.

Thus, based on the record before the court, there are genuine issues of material fact as to whether Hobbs's housing placement served as a punishment. And, even if Hobbs's initial placement may have served a reasonable administrative or security interest, questions remain as to the length of his stay in Unit 4S. Therefore, the court cannot determine at this juncture whether Hobbs was entitled to procedural due process under *Bell*.

B. Access to Courts

Defendants construe Hobbs's allegations that the imposed telephone restrictions impeded his ability to hire private counsel for his bail review hearing as an access-to-courts claim. ECF 42-1 at 11.[5] In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court determined that "the

---

[5] In his Opposition, Hobbs asserts for the first time that his Sixth Amendment rights were violated because he was not able to retain private counsel for his bail review. ECF 48-1 at 5. However, the court may not address claims made for the first time in an opposition to a dispositive motion. An opposition is not a vehicle for amending a pleading. *See Witten v. Apria Healthcare Group, Inc.*, PWG-14-3193, 2015 WL 2227928, at *6 (D. Md. May 11, 2015) (citing *Saunders v. Putnam Am. Gov't Income Fund*, JFM–04–560, 2006 WL 1888906, at *2 n. 2 (D. Md. July 7, 2006)) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Id.* at 828. "Inmates have a constitutional right to a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the court' which a state may not abridge or impair." *Burton v. Allen*, 17-cv-00075-FDW, 2018 WL 4222881, at *4 (W.D.N.C. Sept. 4, 2018) (quoting *Bounds*, 430 U.S. at 825). However, "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

The Fourth Circuit explains that a pretrial detainee's right of access to courts when seeking assistance with a pending criminal matter is based on the Sixth Amendment right to counsel. *United States v. Chatman,* 584 F.2d 1358 (4th Cir. 1978). In *Chatman*, it said, *id.* at 1360:

> [*Bounds*] held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. Bounds, of course, has no direct application to defendant. He was accused of crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read Bounds to give an option to the Prisoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that Bounds has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold.

*See also Prater v. City of Philadelphia*, 542 F.App'x 135, 137 (3d Cir. 2013) (stating that "appointment of counsel is sufficient to provide a pretrial detainee with meaningful access to courts") (internal quotation and citations omitted).

Ultimately, for a pretrial detainee to state a claim that he was denied the right of access to the courts, he must allege that he was "actually injured in some way by the denial of access." *Tate v. Parks*, 791 F.App'x 387, 392 (4th Cir. 2019) (citing *Lewis*, 518 U.S. at 351). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Lewis*, 518 U.S. at 399.

An inmate claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

No genuine issue of material fact remains, as Hobbs fails to demonstrate that he suffered an actual injury. The record shows that Hobbs had a bail review hearing on February 8, 2018, while he was in the restrictive housing unit. ECF 30-2 at 3. Hobbs acknowledged that he was able to speak with his public defender prior to that hearing. Although Hobbs complains that he was not able to hire private counsel, as he desired, he fails to demonstrate that he suffered any injury as a result of having a public defender represent him at his bail review, rather than privately retained counsel. *See Wheat v. United States*, 486 U.S. 153, 158-59 (1988) ("Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant

rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

To show actual injury, Hobbs must establish that he had a nonfrivolous claim for bail which he could not pursue as a result of defendants' actions. Hobbs simply claims that he did not have the attorney he wanted for his bail review hearing, but fails to demonstrate that he had a meritorious claim to be granted bail. Rather, he provides only conclusory allegations that a private attorney would have led to his being granted bail, without showing the merits of his underlying claim. I cannot conclude that plaintiff's right of access to courts was violated. Accordingly, defendants are entitled to summary judgment with respect to this claim.

C.  Qualified Immunity

Finally, defendants generally assert that they are entitled to qualified immunity. However, they provide only a general statement of the qualified immunity principles, without any substantive analysis of the issue.

"Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Government Services, Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018)) (cleaned up); *see Rivas-Villegas v. Cortesluna*, 595 U.S. ___, 142 S. Ct. 4 (2021) (per curiam); *City of Tahlequah Okla. v. Bond*, 595 U.S. ___, 142 S. Ct. 9 (2021) (per curiam); *Taylor v. Riojas*, ___ U.S. ___, 141 S. Ct. 52, 53 (2020); *Hulbert v. Pope*, 70 F. 4th 726, 732 (4th Cir. 2023); *Franklin v. City of Charlotte*, 64 F.4th 419, 530, 534-35 (4th Cir. 2023); *Hicks v. Ferreyra*, 64 F.4th 156, 169 (4th Cir. 2023); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017), *cert.*

*denied*, ___ U.S. ___, 138 S. Ct. 2602 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015).

In *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 395 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015), the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818. An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

To analyze whether qualified immunity applies, the courts generally employ a two-step inquiry. *Hicks*, 64 F.4th at 169. The two inquires are as follows: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001); and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012),

23

*cert. denied*, 568 U.S. 1068 (2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)); *see also Cannon v. Village of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018); *Scinto*, 841 F.3d at 235. The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see Hicks*, 64 F.4th at 169; *Barrett*, 975 F.3d at 428-29; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018); *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Countless cases support these principles. *See, e.g., Wesby*, 137 S. Ct. at 589; *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Saucier*, 533 U.S. at 206; *Robertson v. Anderson Mill Elem. School*, 989 F.3d 282, 288 (4th Cir. 2021); *Ray v. Roane*, 948 F.3d 222, 229-30 (4th Cir. 2020); *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019); *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019); *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018); *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *Spivey v. Norris*, 731 F. App'x 171, 175 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 F. App'x 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant*, 677 F.3d at 661.

Qualified immunity is an affirmative defense. *Hicks*, 64 F.4th at 169; *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 305 (4th Cir. 2006). But, it does not merely provide a defense to liability. Rather, it provides "*immunity from* suit . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in *Mitchell*); *see Gilliam v. Sealey*, 932 F.3d 216, 229 (4th Cir. 2019),

*cert. denied*, ___U.S.___, 140 S.Ct. 2641 (2020)*; see also Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015). Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell*, 472 U.S. at 526).

"The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred . . . . [and] [t]he defendant bears the burden of proof on the second question—*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted); *see also Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). In other words, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Purnell,* 501 F.3d at 377 n.2 (citation omitted).

As indicated, if an officer is shown to have violated the rights of a plaintiff, the court must "evaluate whether the right at issue was 'clearly established' at the time of the officer's conduct." *Wilson*, 893 F.3d at 219. This is a question of law for the court to resolve. *Ray*, 948 F.3d at 228; *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). "The inquiry into whether a constitutional right is 'clearly established' requires defining the right at issue." *Hicks*, 64 F.4th at 170; *see Halcomb*, 992 F.3d at 319-20. "The Supreme Court has cautioned against defining a right with 'a high level of generality'. . . ." *Hicks*, 64 F.4th at 170 (citing *Kisela v. Hughes*, ___ U.S. ___, 138 S.Ct. 1148, 1152 (2018)).

Notably, "even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th

Cir. 1991)); *see also Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019); *Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines v. Community Services Board*, 822 F.3d 159, 170 (2016)).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

Hobbs alleges that he was punished and denied due process when defendants placed him in restrictive housing, in violation of his rights under the Fourteenth Amendment. Defendants contend that their actions, taken in light of information provided to them by BCPD and its request to restrict Hobbs's telephone access, are reasonably related to the governmental objective of security.

Importantly, a "question of material fact" as to whether "'the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d

553, 559 (4th Cir. 2005) (citation omitted).  A dispute of material fact is not appropriate for resolution, either at the motion to dismiss stage or on summary judgment.

As discussed above, at this juncture I cannot resolve the disputes of fact relevant to Hobbs's Fourteenth Amendment claims.  Therefore, resolution of the issue of qualified immunity is also premature.

### III.   Conclusion

For the foregoing reasons, defendants' Motion, construed as a motion for summary judgment, is GRANTED in part and DENIED in part.  Judgment is granted in defendants' favor as to Hobbs's access to courts claim; the Motion is otherwise denied.

As this case will proceed to discovery, and in light of Hobbs's incarcerated status, I will grant him leave to file a motion to proceed in forma pauperis and a motion to appoint counsel.

A separate Order follows.


July 18, 2023                                         _____/s/_____
Date                                                 Ellen L. Hollander
                                                     United States District Judge